IN THE UNITED STATES COURT OF FEDERAL CLAIMS

SNJEZANA COYNER,

    Plaintiff,

v.

THE UNITED STATES,

    Defendant.

No.:   20-712 C

# COMPLAINT

Snjezana Coyner, (the "Plaintiff" or "Ms. Coyner"), by and through her undersigned counsel, hereby files this Complaint against Defendant, the United States of America, to redress actions and omissions taken by Defendant in violation of 38 U.S.C. §§ 7453 and other applicable laws, rules and regulations. Plaintiff seeks a declaratory judgment, backpay and other relief. Plaintiff also seek interest on the above amounts pursuant to the provisions of 5 U.S.C. § 5596(b), along with attorney's fees and costs.

# INTRODUCTION

1. This is an action brough on behalf of Plaintiff, a Title 38 employee employed by the United States Department of Veterans Affairs ("VA"), who did not receive overtime pay or compensatory time for which she is entitled under 38 U.S.C §§ 7453 and under VA regulations and policies, for all hours of work that she performed on a recurring and involuntary basis and in excess of fifteen (15) minutes, in excess of forty (40) hours in an administrative workweek, and/or in excess of eight (8) consecutive hours in a workday, or in excess of her daily work requirement. This action also seeks to recover damages as a result of the VA's prohibited personnel practice which resulted in the loss of pay and/or breach of contract when it required

1

Plaintiff to pay back a portion of her Relocation Service Agreement when the terms and conditions requiring such a return were not met and where Plaintiff was entitled to the entire amount set forth in the agreement.

## JURISDICTION AND VENUE

2. Jurisdiction over this action is conferred by 28 U.S.C. §1491(a)(1) (Tucker Act).

3. Venue is proper in this Court pursuant to 28 U.S.C. §1491(a)(1).

## FACTUAL ALLEGATIONS

4. Plaintiff is an adult citizen of the United States, residing in Grand Junction, Colorado. Plaintiff has been an employee of the VA from 2008 to the present. During the time relevant to this action Plaintiff was employed as a Title 38 employee.

5. With respect to the allegations made in this Complaint, Defendant, the United States of America, has acted principally through the United States Department of Veterans Affairs ("VA"). At all relevant times, the agents, officers, and representatives of the United States who took the actions at issue, were duly authorized by the United States to take those actions and thus, Defendant, the United States of America, is ultimately responsible for the actions described in this Complaint.

6. At all times relevant to this action, Plaintiff was employed as a Registered Nurse within the meaning of 38 U.S.C. §§ 7401(1), 7404, 7421, 7422, 7451, 7452, and 7453.

7. At all times relevant to this action, Plaintiff has been paid on an hourly basis.

8. With respect to "Determining Whether Activities of Health Care Professionals Constitute VA Work," VA policy (VA Handbook 5011, Part II, Chapter 3) states that, "The statutory missions of VHA include patient care, research and education, and supporting these broad missions entail a variety of different work activities. The primary focus is patient care ...."

2

9. VA policy (VA Handbook 5011, Part II, Chapter 3) also states that, "[On-site (VA grounds)] Clinical duties involve providing and/or supervising patient services at VA, clinical teaching at VA related to the care of VA patients, providing patient care at an outpatient clinic, or participating in interdisciplinary patient care conferences at VA. For example, patient evaluation, invasive procedures, consultation, attending rounds, journal club, follow-up calls, clinical documentation, care coordination, or care planning conferences."

10. VA policy (VA Handbook 5011, Part II, Chapter 2) states: "[N]ormally, during each 8-hour tour, employees will be allowed a specific period of time off to eat a meal. A meal period during which employees are regularly and totally excused from their official duties may not be considered as an official duty period for which compensation is payable. When a meal period is set aside, the length of the tour or workday will be extended by the length of the non-work period."

11. VA policy (VA Handbook 5011, Part II, Chapter 3) states: "Basic Workweek. Unless otherwise indicated, the 'basic workweek' for full-time employees shall be 40 hours in length. The normal tour of duty within the 40-hour basic workweek shall consist of five 8-hour days, exclusive of the meal period."

12. VA policy (VA Handbook 5011, Part II, Chapter 3) states: "[A] compressed workweek may only be established if all daily tours of duty within the compressed workweek are in whole hour increments, excluding the meal period (e.g., eight 10-hour tours, eight 9- hour and one 8-hour tour, or six 12-hour and two 4-hour tours of duty each biweekly period). If, however, the meal period is considered hours of work under this chapter, any daily tour of duty on such a day must be in whole hour increments, including the meal period."

13. In or around June 2018, Plaintiff accepted the position of Associate Chief Nurse

("ACN") for VA Care in the Community in Grand Junction, Colorado.

14. She began serving in that position on the pay period beginning June 24, 2018.

15. As part of her acceptance of the position, Plaintiff signed a Relocation Service Agreement (the "RSA") which stated in part that she was to receive a relocation incentive of $32,566.00 in exchange for her agreement to remain employed by the "Department of Veterans Affairs" for three years (78 bi-weekly pay periods). **Exhibit A.**

16. It was Plaintiff's understanding in accepting the Associate Chief Nurse position that she would have management support and upon arrival provided her analysis for the necessary support to the Director Michael Kilmer and the Executive Leadership Team.

17. Shortly after starting in the position it became apparent that due to the state of the department and lack of effective oversight and staffing, Plaintiff was working a significant number of hours beyond her tour of duty and requested compensation for overtime and/or compensatory time.

18. On July 12, 2018, Associate Director Lori Lohar agreed, and a memorandum approving payment of overtime and/or compensatory time was approved.

19. Shortly afterwards, in or around October 2018, AD Lohar departed from Plaintiff's supervisory chain and Associate Director Molly Bruner took over the position.

20. AD Bruner ceased the practice of permitting Plaintiff to earn overtime and compensatory time.

21. Despite not requesting or desiring a gliding schedule, during all time relevant to this action that Plaintiff was employed as the CAN, she was scheduled to work a gliding 40-hour work week, exclusive of meal periods, during which she was able to earn credit hours (not to exceed 24).

22.     During all times relevant to this action, while employed as the ACN, Plaintiff routinely worked: (1) prior to the start of her tour of duty; (2) subsequent to the end of tour of duty; and/or (3) on days in which she utilized leave or was otherwise not scheduled to work in excess of fifteen (15) minutes duration in a calendar day, on a recurring and involuntary basis, and in excess of forty (40) hours in an administrative workweek, in excess of eight (8) consecutive hours in a workday, or in excess of her daily work requirement performing duties.

23.     During all times relevant to this action while employed as the ACN, Plaintiff routinely worked for all or a portion of her unpaid meal period in excess of fifteen (15) minutes duration in a calendar day, on a recurring and involuntary basis, and in excess of forty (40) hours in an administrative workweek, in excess of eight (8) consecutive hours in a workday, or in excess of her daily work requirement performing her duties.

24.     Plaintiff was led to believe that if she did not perform the over-tour work of starting early, staying late, working through lunch, and working on her off days that she would be jeopardizing patient health and safety and cause adverse patient outcomes, which also results in intensified scrutiny, management intervention, and/or potential disciplinary action by VA management, subjecting the VA to legal or malpractice claims and could impact her state licensing status.

25.     Despite repeated requests to do so, and providing actual knowledge of the over-tour work being performed, VA management did not offer to substantively reduce Plaintiff's workload and provide a workload that realistically could be completed within a regularly scheduled shift.

26.     At all times relevant to this action when Plaintiff was employed as the ACN, Defendant has willfully failed to compensate Plaintiff with overtime pay at one and one-half

times her hourly rate of pay or compensatory time off for all hours worked on a recurring and involuntary basis, in excess of fifteen (15) minutes duration in a calendar day, and in excess of forty (40) hours in an administrative workweek, in excess of eight (8) consecutive hours in a workday, or in excess of her daily work requirement, which were not otherwise approved as overtime and paid, or compensatory time off and granted.

27. Plaintiff made numerous attempts to correct the VA's failure to pay the proper additional overtime pay.

28. Throughout the duration of her time as ACN, Defendant, including supervisors and/or other VA personnel with the authority to order or approve overtime work and pay, had knowledge that Plaintiff, on a recurring and involuntary basis, worked additional hours in excess of fifteen minutes in a calendar day, in excess of forty (40) hours in an administrative workweek, in excess of eight (8) consecutive hours in a workday, or in excess of her daily work requirements performed her duties, and expected, required, and induced Plaintiff to work during her unpaid meal period, prior to the start of her tour of duty, subsequent to the end of her tour of duty, and on days in which she utilized leave or was otherwise not scheduled to work to ensure that patient care was not compromised. Indeed, Plaintiff routinely worked 70-80 hour weeks.

29. Had Plaintiff not performed this work it would have resulted in veteran care issues not being addressed, vendor issues which would have jeopardized patient health and safety, caused adverse patient outcomes due to lack of care/timely care, downstream billing issues, as well as disciplinary actions and potentially subjecting the Agency to legal and malpractice claims.

30. On July 15, 2019, Plaintiff notified her supervisor that she had accepted a position as a Nurse Consultant for the Department of Veterans Affairs, Office of Inspector General. Her

last scheduled day of employment as the ACN was August 3, 2019, and she started in her new position on August 4, 2019.

31. After some discussions concerning the repayment of her RSA, Plaintiff was informed by Chief Financial Manager Jim Schulz that she would be required to repay a pro-rated portion of the RSA because the "intent of the agreement was that the relocation bonus was for a 3 year service agreement as the VACC Chief in Grand Junction."

32. Plaintiff disputed that assertion and noted that both the plain language of the RSA as well as her discussions concerning the intent of the RSA plainly indicated that so long as she remained employed by the VA that no repayment would be necessary and because her new position remained with the VA no repayment should be necessary. **Exhibit A.**

33. As a result of the Defendant's conduct described in this Complaint, Plaintiff has suffered injuries including, but not limited to, economic loss by not receiving the pay or time off to which she was entitled or her full RSA funds.

34. The conduct described in this Complaint was intentional.

## COUNT I
### VIOLATION OF NURSE ADDITIONAL PAY STATUTE 38 U.S.C. § 7453 BY DEPARTMENT OF VETERANS AFFAIRS

35. Plaintiff incorporates the allegations of Paragraphs 1 through 34 of the Complaint as if fully set forth herein.

36. Per 38 U.S.C. § 7453(e)(1), "A nurse performing officially ordered or approved hours of service in excess of 40 hours in an administrative workweek, or in excess of eight consecutive hours, shall receive overtime pay for each hour of such additional service. The overtime rates shall be one and one-half times such nurse's hourly rate of basic pay."

37. Per 38 U.S.C. § 7453(e)(2), "For purposes of this subsection, overtime must be of

at least 15 minutes duration in a day to be creditable for overtime pay."

38. Per 38 U.S.C. § 7453(e)(3), "Compensatory time off in lieu of pay for service performed under the provisions of this subsection shall not be permitted, except as voluntarily requested in writing by the nurse in question."

39. Per 38 U.S.C. § 7453(f), "For the purpose of computing the additional pay provided by subsection (b), (c), (d), and or (e), a nurse's hourly rate of basic pay shall be derived by dividing such nurse's annual rate of basic pay by 2080."

40. Defendant's knowledge of Plaintiff's additional hours worked on a recurring and involuntary basis, in excess of fifteen (15) minutes duration in a calendar day, and in excess of forty (40) hours in an administrative workweek, in excess of eight (8) consecutive hours in a workday, or in excess of her daily work requirement and expectation, requirement, and inducement to work those additional hours constitute Defendant's order or approval for the additional hours worked.

41. At all times relevant to this action and continuing to the present, Defendant willfully failed to pay Plaintiff for additional hours worked on a recurring and involuntary basis, in excess of fifteen (15) minutes duration in a calendar day, and in excess of forty (40) hours in an administrative workweek, in excess of eight (8) consecutive hours in a workday, or in excess of her daily work requirement at an overtime rate of one and one-half times the hourly rate of pay or with compensatory time off.

42. The foregoing actions of Defendant constitute violations of the additional overtime pay provisions of 38 U.S.C. § 7453.

43. Plaintiff has been financially damaged by the VA's failure to properly pay additional overtime pay and is entitled to recover from the Defendant relief that includes, but is

not limited to, any and all unpaid overtime back pay, and interest on such overtime back pay, for all additional hours worked on a recurring and involuntary basis, in excess of fifteen (15) minutes duration in a calendar day, and in excess of forty (40) hours in an administrative workweek, in excess of eight (8) consecutive hours in a workday, or in excess of their daily work requirement; and, reasonable attorney's fees and costs of this action pursuant to 38 U.S.C. § 7453 and 5 U.S.C. § 5596.

**COUNT II**
**VIOLATION OF OVERTIME REGULATIONS AND POLICIES BY DEPARTMENT OF VETERANS AFFAIRS**

44. Plaintiff incorporates the allegations of Paragraphs 1 through 34 of the Complaint as if fully set forth herein.

45. Per 38 U.S.C. § 7421(a) and (b), the VA Secretary "shall prescribe by regulation the hours and conditions of employment and leaves of absence" of employee classifications that include registered nurses.

46. In VA Handbook 5011 and VA Directive 5011, the VA has promulgated policies pertaining to Hours of Duty and Leave for Title 38 employees.

47. Per VA policy (Handbook 5011, Part II, Chapter 3), "Unless otherwise indicated, the 'basic workweek' for full-time employees shall be 40 hours in length. The normal tour of duty within the 40-hour basic workweek shall consist of five 8-hour days, exclusive of the meal period."

48. Per VA policy (Handbook 5011, Part II) the term "administrative workweek" is defined to be "[a] period of 7 consecutive calendar days, which coincide with the calendar week, Sunday through Saturday."

49. Per VA policy (Handbook 5011, Part II, Chapter 3) employees are permitted to

work "flexible" and "compressed work schedules" that do not conform to the "basic workweek" for title 38 employees appointed under 38 U.S.C. § 7401(1), which includes registered nurses.

50. Per VA policy (Directive 5011/2, Transmittal Sheet), "In the establishment of work schedules, employees will have their assignments scheduled in advance over periods of not less than one administrative workweek and such schedules will be established in a manner that realistically reflects the actual work requirement."

51. Per VA policy (Directive 5011/2, Transmittal Sheet), "Duty schedules for Title 38 healthcare employees shall be established as appropriate and necessary for performance of services in the care and treatment of patients and other essential activities within the administration for the Under Secretary for Health or designated officials."

52. In VA Handbook 5007 and VA Directive 5007, the VA has promulgated policies pertaining to Pay Administration for Title 38 employees.

53. Per VA policy (Handbook 5007/12, Part V, Chapter 2), "Overtime is considered an expedient to be used only under conditions wherein necessary operations cannot be performed through planned coverage by on-duty personnel during their regular non-overtime basic workweek. Supervisory personnel must obtain proper authorization for overtime before permitting or requiring the performance of overtime work by an employee . . . Each responsible official shall also adhere to a policy of authorizing only such overtime as can be readily demonstrated as wholly supported from the standpoint of emergency and/or efficiency in carrying out responsibilities, and with due regard to cost and the availability of current funds."

54. Per VA policy (Handbook 5011, Part II, Chapter 3), "Timekeeping documents shall reflect actual hours worked by full-time, part-time, and intermittent employees. Failure to appropriately monitor compliance with the policies and procedures in this handbook, or failure

to properly account for time and attendance may result in appropriate disciplinary and/or legal action."

55.     Per VA policy (Handbook 5007/12, Part V, Chapter 2), "Except as provided in paragraph 3a of this chapter, probational and permanent full-time nurses, PAs [physician assistants], and EFDAs are employed on the basis of a 40-hour basic workweek, unless on an alternate work schedule, as indicated in VA Handbook 5011, Hours of Duty and Leave. Computation of regular pay for employees on the 40-hour basic workweek shall be based on a basic hourly rate, derived by dividing the employee's annual rate of basic pay by 2080 . . . Overtime must be at least 15 minutes duration in a calendar day to be creditable for overtime purposes . . . Overtime is payable for service performed in excess of 40 hours in an administrative workweek, or in excess of 8 hours in a day, whichever is greater, at a rate of one and one-half times the employee's basic hourly pay. Note: For employees on compressed work schedules, overtime pay is payable for service performed in excess of the employee's daily work requirement . . . An official authorized to approve overtime work may, at the written request of eligible employees, grant such employees compensatory time off from their scheduled tour of duty in lieu of overtime pay."

56.     Per VA policy (Directive 5007), "VA will administer pay programs in a fair and equitable manner, consistent with applicable title 5 and title 38 provisions, Office of Personnel Management (OPM) regulations, and applicable Comptroller General and OPM decisions."

57.     Defendant's knowledge of Plaintiff's additional hours worked on a recurring and involuntary basis, in excess of fifteen (15) minutes duration in a calendar day, and in excess of forty (40) hours in an administrative workweek, in excess of eight (8) consecutive hours in a workday, or in excess of her daily work requirement and expectation, requirement, and

inducement to work those additional hours constitute Defendant's authorization for the additional hours worked.

58. At all times relevant to this action and continuing to the present, the Defendant willfully failed to pay Plaintiff for additional hours worked on a recurring and involuntary basis, in excess of fifteen (15) minutes duration in a calendar day, and in excess of forty (40) hours in an administrative workweek, in excess of eight (8) consecutive hours in a workday, or in excess of her daily work requirement with overtime pay at a rate of one and one-half times her hourly rate of pay or compensatory time off.

59. The foregoing actions of the Defendant constitute violations of VA regulations and policies, enumerated in the above paragraphs, enacted and implemented pursuant to the VA's authority under 38 U.S.C. § 7421, as well as violations of the additional overtime pay provisions of 38 U.S.C. §§ 7453.

60. Plaintiff has been financially damaged by the VA's failure to properly pay additional overtime pay and is entitled to recover from the Defendant relief that includes, but is not limited to, any and all unpaid overtime back pay, and interest on such overtime back pay, for all additional hours worked on a recurring and involuntary basis, in excess of fifteen (15) minutes duration in a calendar day, and in excess of forty hours in an administrative workweek, in excess of eight (8) consecutive hours in a workday, or in excess of her daily work requirement; and, reasonable attorney's fees and costs of this action pursuant to 38 U.S.C. §§ 7453, 5 U.S.C. § 5596, and VA regulations and policies.

## COUNT III
### UNJUSTIFIED OR UNWARRANTED PERSONNEL ACTION

61. Plaintiff incorporates the allegations of Paragraphs 1 through 34 of the

Complaint as if fully set forth herein.

62. 5 U.S.C. §5753 and 5 C.F.R. Part 575, Subpart B, set forth the law and regulations concerning when and how a federal agency may provide a relocation incentive.

63. Pursuant to 5 C.F.R. § 575.201, "An agency may pay a relocation incentive to a current employee who must relocate to accept a position in a different geographic area under the conditions specified in this subpart provided the agency determines that the position is likely to be difficult to fill in the absence of an incentive."

64. In an effort to fill Plaintiff's ACN position, the VA entered into a Relocation Service Agreement with the Plaintiff. **Exhibit A.**

65. The RSA required the VA to pay Plaintiff a relocation incentive of $32,566.00 in two-equal payments in exchange for Plaintiff agreeing to continue her employment with the Department of Veterans Affairs for 3 years (78 pay periods).

66. Despite the express and unambiguous language of the RSA, the VA required Plaintiff to re-pay a portion of the incentive bonus ($20,895.64) even though she remained an employee of the Department of Veterans Affairs.

67. In requiring her to re-pay a portion of the RSA, and not accounting for tax implications of the payment and re-payment, the Agency subjected Plaintiff to an unjustified or unwarranted personnel action which resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials to which she was entitled.

68. Pursuant to 5 U.S.C. §5596(b), Plaintiff is entitled to an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the she would have earned or received if the personnel action had not occurred plus reasonable attorney fees.

## COUNT IV
## BREACH OF CONTRACT

69. Plaintiff incorporates the allegations of Paragraphs 1 through 34 of the Complaint as if fully set forth herein.

70. Plaintiff entered into an express contract with Defendant when she signed the Relocation Services Agreement. **Exhibit A.**

71. Plaintiff and Defendant mutually agreed to be bound by the terms of the RSA.

72. Defendant agreed to provide Plaintiff with a relocation incentive in the amount of $32,566.00 in exchange for Plaintiff agreeing to serve 3 years (78 bi-weekly pay periods) of employment with the Department of Veterans Affairs.

73. The offer, acceptance and consideration lacked any ambiguity.

74. Associate Director Lori A. Lohar and Director Michael T. Kilmer had actual authority to bind the Defendant in contract.

75. Defendant breached the contract by requiring Plaintiff to return $20,895.64 of the total consideration despite the fact that she did not leave the employ of the Department of Veterans Affairs.

76. Plaintiff is entitled to recover her economic losses from this breach of contract.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

1. Declare that the Defendant's conduct alleged herein to be in violation of the Plaintiff's rights under 38 U.S.C. § 7453, and under overtime pay regulations and policies of the VA;

2. Enter judgment against Defendant for all back pay due to Plaintiff for any and all unpaid

overtime pay due under 38 U.S.C. § 7453, 5 U.S.C. § 5596, and overtime pay regulations and policies of the VA, which Defendant unlawfully withheld from Plaintiff;

3. Award Plaintiff an adjustment for any negative State and Federal Income Tax consequences she may incur or has already incurred, related to the payment of any award herein;

4. Declare the Defendant's conduct pertaining to the repayment of the RSA alleged herein to be an unjustified personnel action and/or a breach of contract;

5. Award Plaintiff pre-judgment interest on any and all unpaid wages or other damages to which she may be entitled;

6. Award interest pursuant to 5 U.S.C. § 5596(b) on all above amounts;

7. Award reasonable attorney's fees and the costs and disbursements of this action to be paid by Defendant to Plaintiff's counsel under 5 U.S.C. § 5596; and

8. Grant such further and other relief as this Court deems just and proper.

Respectfully submitted,

 /s/  **JACOB Y. STATMAN**
Jacob Y. Statman, Esq.
Snider & Associates, LLC
600 Reisterstown Road; 7th Floor
Baltimore, Maryland 21208
Phone: (410) 653-9060
Fax: (410) 653-9061
Email: jstatman@sniderlaw.com

Counsel of Record for Plaintiffs

## **CERTIFICATE OF SERVCE**

I hereby certify that on this 12th day of June, 2020, a copy of the foregoing Complaint, Civil Cover Sheet, and Exhibit A (RSA) were filed with the Clerk of Court via the CM/ECF filings system. Pursuant to the Rules of the United States Court of Federal Claims, the Clerk of Court will serve the Defendant, United States.

 /s/  **JACOB Y. STATMAN**
Jacob Y. Statman, Esq.
Snider & Associates, LLC
600 Reisterstown Road; 7th Floor
Baltimore, Maryland 21208
Phone: (410) 653-9060
Fax: (410) 653-9061
Email: jstatman@sniderlaw.com

Counsel of Record for Plaintiffs